**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ZELMA VONCILE COOK,

       Plaintiff,

vs.                                                CASE NO. 3:11-cv-696-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

<u>**ORDER AND OPINION**</u>

      This case is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for social security income ("SSI") benefits. Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by Order of Reference dated October 5, 2011 (Doc. #13). The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number). For the reasons set out herein, the Commissioner's decision is **AFFIRMED.**

**I. Procedural History**

      Plaintiff filed an application for SSI benefits, alleging disability beginning December 4, 2007 (Tr. 144-47). Plaintiff's application was denied initially and upon reconsideration (Tr. 60-61, 77-84). Plaintiff requested an administrative hearing, which was held on June 3, 2010 (Tr. 8-59). The administrative law judge ("ALJ") issued a decision denying Plaintiff's application on July 22, 2010 (Tr. 62-76). Plaintiff filed a request for review, which

the Appeals Council denied on June 9, 2011 (Tr. 1-6).  Plaintiff filed the instant action in

federal court on July 14, 2011 (Doc. #1).

## II. Summary of the ALJ's Decision

A plaintiff may be entitled to disability benefits under the Social Security Act if she

is unable to engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected either to result in death or last for a

continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  The

Commissioner has established a five-step sequential evaluation process for determining

whether a plaintiff is disabled and therefore entitled to benefits.[1]  *See* 20 C.F.R. § 416.920[2];

*Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the instant case, at step one of the sequential evaluation process, the ALJ found

that Plaintiff had not engaged in substantial gainful activity since June 26, 2008, the

application date (Tr. 67).  At step two, the ALJ found Plaintiff suffered from the severe

impairments of diabetes, anxiety, depression, chronic obstructive pulmonary disease

("COPD") and hyperthyroidism.  *Id.*  At step three, the ALJ determined Plaintiff did not have

---

[1] First, if a claimant is engaging in substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments do not prevent her from performing her past relevant work, she is not disabled. 20 C.F.R. § 416.920(f).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 416.920(g). A plaintiff bears the burden of persuasion through step four, but the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

[2] Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition.

an impairment or combination of impairments that meets or medically equals one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 68).  At step four, the

ALJ found Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b), except that she is to
> avoid more than occasional balancing, stopping, kneeling, crouching,
> crawling or climbing of stairs or ramps; she is to avoid more than frequent
> fingering with the right hand; she is to avoid all exposure to unprotected
> hazards or climbing of ropes, ladders or scaffolds or concentrated exposure
> of extremes of temperature or pulmonary irritants; and she is restricted to
> simple, routine, repetitive tasks in a non-production work environment.

(Tr. 69).  Considering this RFC, the ALJ found that Plaintiff was incapable of performing her

past relevant work of school bus driver, warehouse worker and cashier (Tr. 71).  However,

the ALJ found Plaintiff had acquired work skills from past relevant work "such as report

writing" that would be transferable to light and sedentary jobs.  *Id.*  At step five, utilizing

vocational expert testimony, the ALJ found there were other jobs existing in significant

numbers in the national economy that Plaintiff could perform, including appointment clerk,

dispatcher, and animal shelter clerk (Tr. 71-72).  Therefore, the ALJ found that Plaintiff was

not under a disability since June 26, 2008, the date her application was filed (Tr. 72).

### III. Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ

applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  *See also*

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.  42 U.S.C. § 405(g).  "Substantial evidence is defined as more than a scintilla,

i.e., evidence that must do more than create a suspicion of the existence of the fact to be

established . . . and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. Although the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding the claimed impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987);

4

42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is the plaintiff's burden to provide the relevant medical and other evidence establishing disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

### IV. Analysis

Plaintiff raises several issues on appeal.  First, Plaintiff argues the ALJ erred in finding Plaintiff had transferable skills of report writing from her past relevant work.  Second, Plaintiff argues the vocational expert's ("VE") testimony is internally inconsistent as to whether simple, routine, repetitive work limitations would preclude the performance of low-level semi-skilled occupations.  Third, Plaintiff argues the ALJ asked a hypothetical question of the VE that failed to accurately account for all of Plaintiff's limitations.  Fourth, Plaintiff argues the ALJ erred in evaluating the opinion of the consultative examiner, Dr. Lynda Walls.  The Court will address each argument in turn.

**A. Whether the ALJ erred in determining Plaintiff had transferable skills from her past relevant work**

In the instant case, the ALJ, relying on vocational expert testimony, found Plaintiff had "acquired skills such as report writing" from her past relevant work, that would be transferable to light and sedentary jobs.  The ALJ identified Plaintiff's past relevant work as a school bus driver, warehouse worker, and cashier.  In his decision, the ALJ noted the vocational expert identified the jobs of appointment clerk, dispatcher, and animal shelter clerk as occupations "which could be performed by an individual with the same age,

education, past relevant work experience and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills" (Tr. 71). At the hearing, the vocational expert testified there was some "report writing or reporting" from the school bus driver position[3] that would be transferable to low semi-skilled sedentary jobs, including appointment clerk, dispatcher and animal shelter clerk (Tr. 54).

Plaintiff argues the ALJ erred in finding Plaintiff had transferable skills of report writing from her past work because all of Plaintiff's past work, except for the unskilled position of warehouse worker, was performed at a level below substantial gainful activity ("SGA") and thus cannot be considered past relevant work that would give rise to transferable skills. Specifically, Plaintiff contends her past work did not meet the SGA threshold because her earnings did not meet the "earnings level required to constitute substantial gainful activity."

A claimant is considered to have transferable skills "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 416.968(d)(1). Past relevant work is work (1) that the claimant performed within the last fifteen years; (2) that lasted long enough for the claimant to learn how to do the work; and (3) that was performed at the level of substantial gainful activity. 20 C.F.R. § 416.965(a). Substantial gainful activity is work that "involves doing significant physical or mental

---

[3] The vocational expert also stated this skill was acquired in Plaintiff's work as a quality control supervisor for Performance Packaging. Since the ALJ did not identify this position as past relevant work in his decision, the Court only addresses whether Plaintiff acquired transferable skills from the school bus driver position.

activities," even if done on a part-time basis, and that is done "for pay or profit," whether or not a profit is realized.  20 C.F.R. § 416.965(a)-(b).  In general, the "primary consideration" in determining whether past work is SGA is the amount of earnings derived from the work activity.  20 C.F.R. § 416.974(a)(1); *McCrea v. Astrue*, 407 Fed. Appx. 394, 396 (11th Cir. 2011).[4]  "Under the regulations' earnings guidelines, a claimant's earnings (in 2001 and each year thereafter) ordinarily will show that he engaged in substantial gainful activity if the earnings were more than the previous year or the average monthly earnings were more than $700, adjusted for changes in the national average wage index."  *McCrea*, 407 Fed. Appx. at 396.  "However, the fact that [a claimant's] earnings were not substantial will not necessarily show that [the claimant is] not able to do substantial gainful activity."  20 C.F.R. § 416.974(a)(1).

Thus, although earnings are the "primary" consideration, they are not the "only" consideration when determining whether past work was substantial gainful activity.  "Although earnings below the guidelines will 'ordinarily' show that an employee has not engaged in substantial gainful activity, earnings below the guidelines will not conclusively show that an employee has not engaged in substantial gainful activity."  *Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993) (citing 20 C.F.R. § 404.1574(a)(1)); *see also Drejka v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 778, 783 (3rd Cir. 2003) ("Although [claimant's] earnings did not satisfy the regulations' earnings requirements for substantial gainful

---

[4] Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

employment, earnings can only 'presumptively establish' the presence or lack of substantial gainful activity.  The regulations are only guidelines."); *Wade v. Astrue*, No. :11-cv-489, 2012 WL 1004728, at *3 (N.D. Ohio, Mar. 23, 2012) ("[T]he regulations do not establish a bright light rule regarding what constitutes substantial gainful activity. Rather, they set a level of earnings that presumptively constitute substantial gainful activity." (internal citations omitted)).  In *Reeder v. Apfel*, the Eighth Circuit found a claimant had engaged in SGA as a seasonal fruit picker, regardless of whether her average monthly earnings fell below the guidelines,[5] because the work was of the type usually done for pay, involved significant physical or mental activities, and the claimant learned the job and was capable of performing it.  214 F.3d 984, 989 (8th Cir. 2000).

The Court finds the reasoning in *Reeder* to be highly persuasive.  In the instant case, Plaintiff reported on her Work History Report that she worked as a school bus driver from August 2005 to December 4, 2007 (her alleged onset date) (Tr. 187, 239).   Earning statements showed Plaintiff earned $9,605.57 as a school bus driver for First Student Transportation LLC in 2007 (Tr. 141, 148).  Plaintiff described the job as requiring her to take kids back and forth to school, write reports, count the number of kids riding the bus, find street addresses, and know the way around town (Tr. 166).  Plaintiff stated this job required "technical knowledge or skills" and required writing and completing reports.  *Id.* At the hearing, Plaintiff testified her hours varied, some days she would work all day and

---

[5] In *Reeder*, the claimant argued her average monthly earnings were below the guidelines. *Reeder*, 214 F.3d at 989. The Commissioner argued her earnings satisfied the regulations because her monthly income should be averaged only over the four or five months when she was actually seasonally employed, rather than over the entire year.  *Id.* The Circuit court found it "unnecessary to engage in this averaging debate," because it concluded claimant's seasonal work was SGA regardless of her low earnings.  *Id.*

some days only half days due to field trips (Tr. 24).   Plaintiff testified she worked an average of thirty-five hours a week.   *Id.*   Plaintiff testified she stopped driving because she got sick (Tr. 25).   Plaintiff worked as a school bus driver for over two years; she clearly learned how to do the job and was capable of performing it until she became sick. Additionally, it is the type of job usually done for pay and involved significant physical or mental activities.   Accordingly, notwithstanding the fact that Plaintiff's earnings fell just below the guidelines, the Court concludes Plaintiff's work as a school bus driver was substantial gainful activity, and substantial evidence supports the ALJ's finding that this job constituted "past relevant work."   *See Kilzer v. Astrue*, No. 5:10cv321/RS/EMT, 2012 WL 592913, at *9 (N.D. Fla. Jan. 23, 2012), adopted at 2012 WL 602071 (finding ample evidence supported the ALJ's conclusion that claimant's past work constituted past relevant work and noting the record supported a finding that claimant held the job long enough to learn how to perform it); *Hearod v. Astrue*, No. 4:10CV751 RWS/FRB, 2011 WL 3648269, at *14 (E.D. Mo. July 29, 2011) (finding claimant's assembly line work to be SGA even though her income averaged over the entire year was below the guidelines, because it was the type of work normally done for pay, involved significant physical or mental activities, claimant learned the job and was capable of performing it for eight hours per day, five days per week for approximately two years).   Because the ALJ did not err in identifying this position as past relevant work, he did not err in relying on the vocational expert's testimony that claimant's past relevant work as a school bus driver gave rise to the transferable skill of report writing.   *See Zimmer v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 819, 820 (11th Cir. 2006) ("An ALJ relies on the testimony of a vocational expert (VE) to determine what level

of skill the claimant achieved in his past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs." (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999))).

Although the Court finds the ALJ did not err in determining Plaintiff had transferable skills, the Court also briefly addresses Plaintiff's argument that the issue of transferability is critical to this case because "[u]nder the Medical Vocational Guidelines, with an RFC at sedentary, unless Ms. Cook has transferable skills, she should have been determined to be disabled as of turning age 50." Specifically, Plaintiff notes that under Medical Vocational Rule 201.10, "a person of closely approaching advanced age, who has a limited education, where that educational level does not provide for direct entry into skilled work, and has skilled or semi-skilled skills that are not transferable is categorized as 'disabled.'" *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 1, § 201.10. A person with those same characteristics, except that her skills are transferable, is categorized as "not disabled." *See id.* at § 201.11.

The Court notes the ALJ found Plaintiff capable of light work. Thus, Table 1, which is applicable when the RFC is limited sedentary work, does not apply. Table 2, which is applicable when the RFC is limited to light work, directs a finding of not disabled regardless of whether Plaintiff has transferable skills or not. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 2, §§ 202.11, 202.12. However, because Plaintiff had nonexertional limitations, the ALJ did not rely exclusively on the Medical Vocational Guidelines to determine whether Plaintiff could perform other work. Rather, he relied on vocational expert testimony and used the Medical Vocational Guidelines as a framework to support his decision.

10

At step five of the disability determination, the ALJ must determine, considering the claimant's RFC, age, education and work experience, whether the claimant "can make adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy." *Philips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). The ALJ may either apply the Medical Vocational Guidelines ("the grids")[6] or use the testimony of a vocational expert. *Id.* at 1239-40. However, the ALJ may not exclusively rely on the grids either when: (1) the claimant is unable to perform a full range of work at a given work capacity level, or (2) when the claimant has nonexertional impairments that significantly limit basic work skills.[7] *Id.* at 1242 (citing *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985). Thus, only when the assessed RFC is for a full range of work and there are no nonexertional limitations to further diminish a claimant's ability to perform work at a given exertional level, may the ALJ rely exclusively on the grids. Instead, Eleventh Circuit case law strongly suggests a preference for use of a vocational expert where nonexertional impairments limit a claimant's ability to work. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.

---

[6] The grids are a series of rules which use a matrix of a claimant's RFC for sedentary, light, medium or heavy work and the claimant's vocational profile of his age, education and past relevant work, to direct a conclusion on the issue of whether the claimant is capable of substantial gainful activity in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00; *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).

[7] "Exertional limitations affect a claimant's ability to meet the seven strength demands of jobs: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Phillips*, 357 F.3d at 1242 n.11 (citing SSR 96-4, 61 Fed. Reg. 34488 (July 2, 1996)).

"Nonexertional activities include maintaining body equilibrium, crouching, bending, stooping, using fingers, seeing, hearing or speaking, mental functions and tolerating environmental working conditions." *Watson v. Astrue*, 376 Fed. Appx. 953, 957 n.7 (11th Cir. 2010) (citing SSR 83-14).

1999); *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). "In order for the vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones*, 190 F.3d at 1229. "When the ALJ cannot rely solely on the grids, the ALJ nonetheless 'may use [the grids] as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform.'" *Watson v. Astrue*, 376 Fed. Appx. 953, 957 n.7 (11th Cir. 2010) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). However, "[n]othing in the relevant statutes or regulations *requires* the ALJ to use the grids as a framework in all instances." *Id.* at 958 (emphasis in original).

In the instant case, the ALJ found Plaintiff had the residual functional capacity to perform light work, but with several nonexertional limitations. Because the ALJ found Plaintiff had nonexertional limitations that limited her ability to perform the full range of light work, the ALJ could not rely exclusively on the grids to determine whether Plaintiff was disabled. Instead, the ALJ properly relied on vocational expert testimony to determine Plaintiff could perform other work existing in the national economy.

## B. Whether the vocational expert's testimony was internally inconsistent

Plaintiff argues the vocational expert's testimony was internally inconsistent and confusing as to "whether simple, routine, repetitive work limitations would preclude the performance of even a low-level semi-skilled occupation." Defendant contends Plaintiff "makes much of the distinction between 'unskilled' and 'low semiskilled' work and whether Plaintiff had any transferable skills," but Plaintiff's argument "overlooks the central point"

that the VE testified, based on his expertise, Plaintiff could perform the jobs identified in the

ALJ's step five finding.  The Court disagrees with Plaintiff and agrees with Defendant.

In the instant case, the ALJ found Plaintiff had the residual functional capacity to

perform light work, but with several nonexertional limitations, including: (1) avoidance of

more than occasional balancing, stopping, kneeling, crouching, crawling or climbing of

stairs or ramps; (2) avoidance of frequent fingering with the right hand; (3) avoidance of all

exposure to unprotected hazards or climbing of ropes, ladders or scaffolds or concentrated

exposure of extremes of temperature or pulmonary irritants; and (4) restriction to simple,

routine, repetitive tasks in a non-production work environment (Tr. 69).

At the hearing, the ALJ asked the VE the following hypothetical:

> [L]et me have you assume the claimant has a residual functional capacity to
> perform light work as follows.  Lift or carry 20 pounds occasionally, 10
> pounds frequently, stand or walk six hours and sit six hours in an eight-hour
> workday with unlimited push/pull capability but with these additional limits.
> Occasional climb ramps or stairs and occasionally balance, stoop, kneel,
> crouch and crawl and never climb ladders, ropes or scaffolds.  Would avoid
> extreme heat, extreme cold, would avoid pulmonary irritants such as fumes,
> odors, dust, gases and would avoid hazards.  And owing to her finger on her
> right hand would frequently perform fingering and would, would have no use
> of the index finger of the right hand.  I don't know if that effects anything but
> I'll just go with fingering would be frequent on the right hand.  And then two
> mental limitations, would be able to understand, remember and carry out
> simple, routine, repetitive tasks and would not be able to perform fast paced,
> high production demand. Assuming these, these limitations can the claimant
> perform any of her past work as actually performed or as generally
> performed?

(Tr. 52-53).  The VE responded Plaintiff could not perform her past work.  (Tr. 53).

The ALJ then asked a second hypothetical, as follows:

> And for this next hypothetical, sir, I"m going to ask you to assume that the
> claimant has the residual functional capacity to perform sedentary work, that
> is light or carry up to 10 pounds, stand or walk two hours, sit six hours with
> unlimited push/pull capability and then with the same limitations that I earlier

described. . . . And, and I'm going to ask you about, about transferability.  Are
there any skills that the claimant has that a transferable to work within the
sedentary RFC?

(Tr. 53-54).  The VE responded that there was some "report writing or reporting" from

Plaintiff's quality control job and from the school bus driver position that would be

transferable to low semi-skilled sedentary jobs, including appointment clerk, dispatcher and

animal shelter clerk (Tr. 54).  The VE stated the claimant would be able to perform these

jobs "not necessarily based upon the DOT but based upon [his] knowledge, training,

experience and expertise" (Tr. 55).  The ALJ then asked whether the jobs identified could

be performed within the light RFC given in the first hypothetical (Tr. 56).  The VE explained

that the jobs were characterized as sedentary, but if the claimant had the capability to do

light work, she could also do those jobs.  *Id.*

In response to questioning by Plaintiff's counsel, the VE acknowledged that

"[g]enerally when someone has a limitation to simple, routine, repetitive tasks that would

mean that they're only capable of doing unskilled work" (Tr. 57).  The VE explained that

because the report writing was "checklist driven" some labor market people considered it

unskilled, while others considered it semi-skilled.  *Id.*  The VE testified he thought it was "a

little more [than], [than] unskilled work.  I think there [is] some skill to, to making sure the

checklist is, is correct and that the checklist is filled out" (Tr. 58).  Plaintiff's counsel then

asked, "[J]ust to clarify your testimony. You're saying . . . that a person limited to simple,

routine, repetitive tasks can do a semiskilled job, is that what you're saying?"  *Id.*  The VE

responded, "I don't think . . . I'm saying that. I think I'm saying that it's my feeling that . . .

these jobs as I had testified are in agreement with the DOT that it is an SVP: 3, a low semi-

skilled. . . . And she could perform, I think that's how I answered."  *Id.*

The Court does not find the VE's testimony to be as confusing as Plaintiff contends. The VE testified Plaintiff was capable of performing low semi-skilled jobs in response to a hypothetical that included a limitation to simple, routine, repetitive tasks.  Thereafter, through questioning by counsel, the VE acknowledged that "generally" a limitation to simple, routine, repetitive tasks would lead to unskilled work, but in his opinion, "based on his knowledge, training, experience and expertise," Plaintiff could perform the positions he identified.  *See Zimmer*, 211 Fed. Appx. at 820  ("The VE's testimony 'trumps' other sources of information with regard to skill level and alternative jobs." (citing *Jones*, 190 F.3d at 1229)).   Accordingly, the Court finds the vocational expert's testimony provided substantial evidence for the ALJ's conclusion that Plaintiff could perform the occupations identified in his decision.

## C. Whether the hypothetical accounted for Plaintiff's mental limitations

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff.  *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985).  Therefore, the Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the hypothetical question that formed the basis of the vocational expert's testimony, and if so, whether such failure constitutes grounds for reversal. "Hypothetical questions adequately account for a claimant's limitations ... when the questions *otherwise implicitly account* for them." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th  Cir. 2012) (emphasis added).  The Court may affirm the ALJ's opinion when "the ALJ's hypothetical to the VE properly comprised, expressly or by implication, all of [the Plaintiff's] impairments, and the

VE's answer constituted substantial evidence that [the Plaintiff] could perform work in the national economy." *Id.* If the ALJ had "asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the Plaintiff's] impairments, the vocational expert's testimony," would not be substantial evidence for a disability determination. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011). The ALJ, however, is not required to include in the hypothetical question the non-severe impairments, or the limitations that were properly rejected as unsupported. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Loveless v. Massanari,* 136 F.Supp.2d 1245, 1250-51 (M.D. Ala. 2001).

Plaintiff argues certain phrasing used in the RFC was not used in the hypothetical given the vocational expert and the inconsistencies create reversible error.  According to Plaintiff, the ALJ's terminology in the hypothetical of restricting the individual from a job with "fast paced, high production demand" runs afoul of Plaintiff's RFC that limits Plaintiff to a "non-production work environment."  Plaintiff claims the difference in phrasing is significant to the vocational expert's response.

The Southern District of Ohio rejected a substantially similar argument regarding different phrasing in the RFC and the hypothetical question on an individual's restriction from work with productivity quotas.  *See Deaton v. Astrue*, No. 1:10-CV-00461, 2011 WL 4064028 (S.D. Ohio Sept. 13, 2011).  In *Deaton*, "the VE was asked ... to consider a person who could lift ten pounds frequently, and a person who was limited to jobs with no strict production quotas."  *Id.* at *5.  Deaton's residual functional capacity determination limited

16

him to work with "no production quotas or fast-paced jobs." *Id.* at *1.   The court in *Deaton* found there was "no significant difference between a restriction against 'production quotas,' and a restriction against 'strict production quotas.'  Clearly any reference to a quota means a number that must be met, and so these references are essentially the same in meaning. There is no error in the hypothetical question posed to the VE that calls into question the ultimate conclusion that Plaintiff can perform a reduced range of light work." *Id.* at *5.  This Court finds the logic in *Deaton* applies with equal force to this case.  There is no significant difference between "would not be able to perform fast paced, high production demand" and "restricted to . . . non-production work environment."

In *Seever v. Barnhart*, 188 Fed. Appx. 747 (10th Cir. 2006), the court addressed a similar situation when the hypothetical question did not precisely match the claimant's RFC determination.  In *Seever*, the ALJ's operative hypothetical described an individual with "moderate limitation in his abilities to interact with co-workers and to respond to work pressures," but the plaintiff's RFC limited the plaintiff to performing light work "where there is no direct contact ... with co-workers." *Id.* at 750-51. Plaintiff argued the failure to discuss "the work-pressures opinion" in the ALJ's written decision, and hence the RFC, was reversible error. *Id.*  The court disagreed and found  that the ALJ had committed "at most harmless error." *Id.* at 752.

In the instant case, the Court does not find a significant inconsistency between the RFC stated in the ALJ's written decision and the hypothetical questions posited to the vocational expert during the hearing.  The difference is more a matter of semantics than true distinction. It is sufficient that "the ALJ's hypothetical questions closely tracked his

written RFC finding." *See Hodge v. Astrue*, No. 3:10-cv-1419, 2012 WL 589984, at *19 (S.D.W. Va. Feb. 22, 2012) (finding hypothetical questions that "closely track" the RFC finding accurately present all of the claimant's severe impairments). Verbatim recitation of the claimant's RFC assessment is not required to accurately portray all of a claimant's severe impairments in the hypothetical questions presented to the vocational expert. *See Forrester*, 455 Fed. Appx. at 903 (a claimant's limitations may be implicitly accounted for in the hypothetical questions).

In sum, the Court finds the hypothetical question in this case adequately addressed work limitations that are congruent with Plaintiff's vocational profile and severe impairments. Plaintiff's arguments to the contrary are without merit. Having heard the ALJ restrict an individual to simple, routine, repetitive tasks and unable to perform fast paced, high production demand, the vocational expert identified jobs in the national economy that Plaintiff could perform. Having posed a proper hypothetical question, the vocational epxert's testimony in response constitutes substantial evidence to support the ALJ's determination that Plaintiff is not disabled under the Social Security Act.

**D. Whether the ALJ erred in evaluating the opinion of the consultative examiner**

Plaintiff argues the ALJ failed to explain the weight accorded to Dr. Lynda Walls' consultative opinion and only selectively summarized those parts of her opinion that supported the ALJ's conclusions. Specifically, Plaintiff argues the ALJ failed to articulate any basis for not crediting the consultative examiner Dr. Walls' opinion that Plaintiff would not be able to regularly attend to a routine or maintain a schedule and that Plaintiff had "many difficulties dealing with stress." Plaintiff argues "[t]he ALJ's decision should be

reversed because he failed to explain the reasons for not crediting Dr. Walls' opinion." The Court finds Plaintiff's argument to be without merit.

In his decision, the ALJ found Plaintiff's mental impairments caused mild limitations in activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence or pace (Tr. 69). The ALJ stated his findings were "based upon the clinical evaluation by Dr. Walls, and result[ed] from having viewed the evidence in the light most favorable to the claimant." *Id.* The ALJ stated he gave little weight to the non-examining state agency physician, who opined the claimant did not have a severe mental impairment, and gave "greater weight" to the conclusion of Dr. Walls that Plaintiff "is best suited to simple tasks." *Id.* Thus, contrary to Plaintiff's assertion, the ALJ did explain the weight he afforded to Dr. Walls' opinion – he gave Dr. Walls' opinion "greater weight" than the non-examining physician. Additionally, the ALJ did not err in failing to explain his reasons for discounting portions of Dr. Walls opinion because he did not, in fact, discount her opinion. Dr. Walls' opinion supports the ALJ's RFC assessment, and there is no inconsistency between her findings and the ALJ's determination. Dr. Walls found Plaintiff was capable of: (1) following, understanding, and remembering simple instructions and directions; (2) performing simple tasks independently; (3) maintaining attention and concentration for simple task; (4) making appropriate routine decisions; (5) learning new simple tasks; and (6) relating to and interacting appropriately with others (Tr. 429). However, Dr. Walls noted Plaintiff "cannot regularly attend to a routine or maintain a schedule due to many physical difficulties that result in chronic pain and general weakness in her body" and "appears to be having many difficulties dealing with stress." *Id.* To the extent Plaintiff argues the ALJ failed to incorporate all of Dr. Walls' findings into his RFC,

19

the Court disagrees.  The limitation to a "simple, routine, repetitive tasks in non-production work environment" adequately encompasses Dr. Walls' statement that Plaintiff could not regularly attend to a routine or maintain a schedule due to her physical limitations and that she had difficulties dealing with stress.  The Court finds the ALJ considered Dr. Walls' opinion, credited her opinion as to Plaintiff's capabilities and limitations, and adequately incorporated her findings into his RFC assessment.

## V. Conclusion

For the foregoing reasons, the undersigned finds the decision of the ALJ that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence.  The Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of September, 2012.

_Thomas E. Morris_

THOMAS E. MORRIS
United States Magistrate Judge

Copies to: All counsel of record